UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

        Plaintiff,                            Case No. 19-10944

vs.                                            HON. MARK A. GOLDSMITH

CORIZON, INC., et al.,

        Defendants.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFF'S RULE 60(b)(1) MOTION (Dkt. 51)**

Pursuant to Federal Rule of Civil Procedure 60(b)(1), Plaintiff Temujin Kensu has filed a motion for relief from the Court's opinion granting Defendants Corizon, Inc. and Quality Correctional Care of Michigan, P.C.'s renewed motion for summary judgment (Dkt. 51). For the following reasons, Kensu's motion is denied.[1]

**I. BACKGROUND**

Kensu initially filed this 42 § U.S.C. 1983 case as a putative class action (Dkt. 1). Defendants filed a motion for summary judgment (Dkt. 39). Subsequently, the parties stipulated to dismiss the class claims (Dkt. 44). As a result, only Kensu's individual Eighth Amendment claim remained. Because Defendants' motion for summary judgment was framed in the context of the class claims, on July 14, 2021, the Court entered an order denying Defendants' motion for summary judgment without prejudice and directing Defendants to file a new motion for summary judgment focusing only on Kensu's individual claim (Dkt. 45). The Court instructed that the response and reply deadlines set forth in Local Rule 7.1(e)(2) would apply. Id.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Kensu's motion, the briefing includes Defendants' response (Dkt. 53) and Kensu's reply (Dkt. 54).

On July 30, 2021, Defendants filed a renewed motion for summary judgment (Dkt. 48), arguing that Kensu could not show that Defendants maintained a policy, practice, or custom that resulted in the denial of Kensu's medical treatment in violation of his Eighth Amendment rights. Pursuant to Local Rule 7.1(e)(2), Kensu's deadline to file a response was August 20, 2021. That date came and went, without any response or other filing from Kensu. Two months later, the Court entered an opinion granting Defendants' renewed motion for summary judgment. 10/18/21 Op. (Dkt. 49). As the Court explained:

> Defendants' maintenance of an unconstitutional policy, practice, or custom is a necessary element of Kensu's § [] 1983 claim of which Kensu would bear the burden of proving at trial. Doe v. Claiborne Cnty., 103 F.3d 495, 507 (6th Cir. 1996). Defendants support their contention that they did not maintain an unconstitutional policy, practice, or custom with affidavits by healthcare professionals employed by Defendants. See Affidavits (Dkt. 39-6). Because Defendants properly supported their motion, the burden shifts to Kensu to present evidence to show the existence of an unconstitutional policy, practice, or custom. [Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)]. Kensu, having failed to file any response to the motion, has failed to carry his burden of coming forward with evidence to support his claim.

Id. at 2.

Three days later, Kensu filed the instant Rule 60(b)(1) motion, seeking relief from the Court's October 18, 2021 opinion. Kensu contends that his failure to file a response was not the result of his own culpable conduct but, rather, excusable neglect—specifically, the health issues of his lawyer, Keith Altman. Mot. at 7. According to Altman's declaration, he experienced a sudden loss in his right eye's vision on July 2, 2021. Altman Decl. ¶ 3 (Dkt. 51).[2] Since then, he has seen multiple vision specialists, both locally and in Iowa City, Iowa. Id. On August 1, 2021, Altman was hospitalized due to "complications from [his] vision loss and associated treatment." Id. ¶ 4. It appears that he was released from the hospital within a matter of days, but then "needed to attend numerous medical appointments both locally and distantly, which was most acute during August." Id. ¶ 5. While Altman was hospitalized, his staff "filed numerous

---

[2] Altman's declaration was filed in the same document as Kensu's motion rather than as a separate exhibit. See Mot. at PageID.1401–1403.

2

motions for emergency continuance with pending deadlines" in other actions, but did not do so in this case. Id. ¶ 6.

According to Altman, on August 16, 2021, he realized that he had not filed for a continuance in this matter, but "because the brief in opposition to the renewed motion for summary judgment did not require any substantive changes [to the response he filed to Defendants' previous motion for summary judgment], [he] decided that it was more judicially efficient to revise and file the previously filed brief." Id. ¶ 7. He directed his staff to "ma[k]e the required alterations," and "he intended to review the brief and then file the brief when it was due on August 20, 2021." Id. ¶ 8. Altman traveled to Iowa City to see his neuro-ophthalmologist on August 18 and 19, which focused his attention on his medical condition, resulting in his "fail[ure] to review and file the opposition to the renewed motion for summary judgment in this case." Id. ¶ 10. Altman forgot about the un-filed response until the Court issued its October 18, 2021 opinion. Id. ¶ 11.

Kensu has submitted, along with his Rule 60(b)(1) motion, the response brief that Altman intended but failed to file by August 20, 2021. See Mot. at PageID.1416–1439. In that response, Kensu reiterates that he alleged "four distinct unconstitutional policies," but he points to evidence showing the existence of only one of the policies: that "Defendants instituted a policy, practice, or custom of 'deferring' 90% to 99% of all physician-recommended referrals for surgery or consultations with specialists." Id. at PageID.1430 (quoting Am. Compl. ¶¶ 4–5, 296(A) (Dkt. 11)). Specifically, Kensu points to (i) the deposition testimony of a physician assistant, Marian McKissick, stating that "Orthopedic consults for prisoners were denied by Corizon '90 percent, 99 percent of the time,'" id. (quoting McKissick Dep. at 61 (Dkt. 39-2)); and (ii) Kensu's deposition testimony memorializing his "firsthand experience of this policy," id. at PageID.1430–1431 (citing Kensu Dep. at 53, 79, 81 (Dkt. 39-5)).

## II. ANALYSIS

Kensu bears the burden of establishing the existence of mistake, inadvertence, surprise, or excusable neglect under Rule 60(b)(1). Jinks v. Alliedsignal, Inc., 250 F.3d 381, 385 (6th Cir. 2001). As noted above, he relies on excusable neglect. "In determining whether relief is appropriate under Rule 60(b)(1), courts consider three factors: (1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense." Yeschick v. Mineta, 675 F.3d 622, 628 (6th Cir. 2012) (punctuation modified). "A party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors." Id. at 628–629 (punctuation modified). The ultimate decision to grant Rule 60(b)(1) relief lies within the district court's sound discretion. See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc., 298 F.3d 586, 592 (6th Cir. 2002) (holding that district courts have discretion in determining whether to grant a Rule 60(b)(1) motion because Rule 60(b)(1) states that a court "may" grant relief in the case of mistake, inadvertence, surprise, or excusable neglect).

### A. Culpability

The question of culpability here revolves around whether Altman's deteriorating vision justifies his failure to file a response to the renewed motion for summary judgment. "Although the court may consider counsel's illness, regardless of its seriousness, illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)." McCandless v. Countrywide Home Loans, Inc., No. 08–14195, 2009 WL 2447656, at *3 (E.D. Mich. Aug. 7, 2009) (punctuation modified). This is because attorneys are expected to inform the court, within a reasonable amount of time, of any illness that would prevent them from complying with court deadlines. See, e.g., Buck v. United States Dep't of Agric., F.H.A., 960 F.2d 603, 609 (6th Cir. 1992) (holding that the sudden illness of the movant's counsel did not constitute excusable neglect for failure to file pleadings where counsel never informed the court of the illness);

McCandless, 2009 WL 2447656, at *3 (finding counsel's alleged hearing impediment insufficient to warrant Rule 60(b)(1) relief where the lawyer became aware of his deteriorating hearing several months beforehand but failed to apprise the court or opposing counsel of his condition). Thus, counsel's sudden illness—without "additional justification"—cannot demonstrate excusable neglect. McCandless, 2009 WL 2447656, at *3. Absent additional justification, a lawyer's forgetting about a court deadline is not "'excusable neglect' within the meaning of Rule 60(b)(1)." Harris v. Perry, No. 17-6329, 2018 WL 11303644, at *2 (6th Cir. June 29, 2018).

Here, Altman's eyesight began declining over a month and a half before the response deadline. Altman Decl. ¶ 3. During the time leading up to the response deadline, Altman did file for continuances in several of his other cases, but deliberately decided not to do so in this case. Id. ¶¶ 6–7. The reason that he did not file for a continuance in this case is that he remembered the August 20, 2021 deadline and intended to file the response by then. Id. ¶ 10. However, Altman forgot to do so after traveling to Iowa City for medical appointments during the two days prior to the deadline. Id. Altman's medical appointments apparently slowed down after August, see id. ¶ 5, but he still did not remember Kensu's response, see id. ¶ 11, and so Altman did not file a motion for leave to file a late response. He did not think about Kensu's response until the Court issued its opinion granting Defendants' renewed motion for summary judgment. Id. In sum, Altman never at any point leading up to the response deadline—or for two months after it passed—made any attempt to notify the Court of his need for a continuance due to his medical condition. Other than Altman's medical condition, Kensu has not provided any additional justification for the failure to file a response. This means that the failure was the result of culpable conduct, not excusable neglect. See Buck, 960 F.2d at 609; McCandless, 2009 WL 2447656, at *3.

Altman suggests that his neglect of this case should be excused because opposing counsel was aware of Altman's condition due to motions for continuances that Altman filed in other cases involving opposing counsel. Altman Decl. ¶ 7. Altman's attempt to transfer blame to opposing counsel is unpersuasive. Altman does not contend that he specifically asked opposing counsel to help him seek a continuance in this case. Nor would it have been reasonable to expect opposing counsel to assume that it would be appropriate to do so on their own initiative. The fact that Altman believed his medical condition would prevent him from meeting deadlines in some cases does not necessarily mean that it would prevent him from meeting deadlines in all of his cases. By his own admission, Altman decided to not file for a continuance in this matter because he believed it was feasible to comply with the August 20, 2021 response deadline. Id.

Kensu's reply emphasizes that Altman's failure to file a response by August 20 was not "an intentional decision" but, rather, the product of his "accidental[] neglect[]." Reply at 3–4. Indeed, Altman declares that in the midst of his medical appointments, he remembered the response deadline and intended to file the brief by that time, having his staff prepare the response for his review and submission. Id. ¶ 10. But then he forgot to file the response because he was still preoccupied with his medical appointments. Id. Just because neglect is accidental does not make it excusable. It is well-established that mere forgetfulness or carelessness on the part of counsel does not entitle a movant to Rule 60(b)(1) relief. See, e.g., FHC Equities, L.L.C. v. MBL Life Assur. Corp., 188 F.3d 678, 685 (6th Cir. 1999) ("[A] court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness . . . ."); Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986) (holding that attorney's "oversight" in

6

forgetting to respond to a motion did "not constitute excusable neglect," even if that attorney was "preoccupied" with other matters).³

Altman's deteriorating eyesight is, certainly, tragic. But it is insufficient to establish excusable neglect. Kensu's failure to show excusable neglect is, alone, sufficient to deny his motion. See Leszyczynski v. Home Depot USA, Inc., No. 18-13432, 2020 WL 7021698, at *4 (E.D. Mich. Nov. 30, 2020) ("Because Plaintiff cannot make the threshold showing of excusable neglect, the Court is not required to reach the two remaining Yeschick factors. Accordingly, Plaintiff's motion for relief from final judgment under Rule 60(b)(1) is denied."). However, as the below analysis demonstrates, Kensu also fails to show that he has a meritorious underlying claim.

**B. Meritorious Underlying Claim**

Even if Kensu had met the first two Yeschick factors, he cannot satisfy the third—i.e., he cannot show that he has a meritorious underlying claim. At the summary judgment stage, the question is whether Kensu could establish a dispute of material fact such that his § 1983 could survive summary judgment. Because Defendants met their burden of establishing an absence of evidence to support Kensu's case, see 10/18/21 Op. at 2, Kensu must present significant probative evidence to defeat Defendants' renewed motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–249 (1986). Kensu has not done so.

Municipalities—or non-governmental entities such as Defendants, in this case—can be found liable under § 1983 only where a constitutional wrong arises from execution of their policies or customs. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).⁴ "[T]o satisfy

---

³ Attorney oversight cannot justify Rule 60(b)(1) relief even though "this result appears to penalize innocent clients for the forgetfulness of their attorneys." Solaroll, 803 F.2d at 1132. This is because, for purposes of Rule 60(b)(1), a client is accountable for the attorney's acts and omissions. See McCurry, 298 F.3d at 594–595.

⁴ Defendants correctly concede that, because they provided medical services to inmates under contract with the Michigan Department of Corrections, they may properly be sued under § 1983.

the <u>Monell</u> requirements[,] a plaintiff must identify the policy, connect the policy to the city [or entity] itself[,] and show that the particular injury was incurred because of the execution of that policy." <u>Garner v. Memphis Police Dep't</u>, 8 F.3d 358, 364 (6th Cir. 1993). In the response brief attached to his Rule 60 motion, Kensu points to evidence that, he contends, shows the existence of "a policy, practice, or custom of 'deferring' 90% to 99% of all physician-recommended referrals for surgery or consultations with specialists." Mot. at PageID.1430 (citing McKissick Dep.; Kensu Dep.).[5] Kensu also points to his own deposition testimony to prove that he has not received recommended surgery or a specialist consultation. <u>See id.</u> at PageID.1434–1435 (citing Kensu Dep. at 47–48, 82–83).

Kensu, however, fails to point to any evidence showing that he has not received recommended surgery or a specialist consultation <u>because of</u> Defendants' alleged policy of deferring 90–99% of referrals. Section 1983 liability "must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the plaintiff." <u>Gray v. City of Detroit</u>, 399 F.3d 612, 617 (6th Cir. 2005). A plaintiff, therefore, must "present[] sufficient evidence to . . . show that the policy caused her injuries." <u>Brawner</u>, 14 F.4th at 600; <u>see also</u> <u>Boyett v. Cnty. of Wash.</u>, No. 2:04cv1173, 2006 WL 3422104, at *26 (D. Utah Nov. 28, 2006) (granting summary judgment to defendant county in lawsuit where plaintiff alleged that county maintained unconstitutional customs of not treating medical needs because "even if such policies did exist, the plaintiff has not shown the policy or custom is directly and causally linked

---

Mot. for Summ. J. at 6 (citing <u>Street v. Corrs. Corp. of Am.</u>, 102 F.3d 810, 817–818 (6th Cir. 1996)); <u>see also</u> <u>Ferguson v. Corizon</u>, No. 12-11702, 2013 WL 4758196, at *10 (E.D. Mich. Sept. 4, 2013) (citing <u>Hicks v. Frey</u>, 992 F.2d 1450, 1458 (6th Cir. 1993)).

[5] As noted above, Kensu states that he alleged "four distinct unconstitutional policies," but he points to evidence showing the existence of only one of the policies: that "Defendants instituted a policy, practice, or custom of 'deferring' 90% to 99% of all physician-recommended referrals for surgery or consultations with specialists." Mot. at PageID.1430. Defendants would, therefore, necessarily prevail on their motion for summary judgment to the extent that Kensu's § 1983 is based on the other three allegedly unconstitutional policies. <u>See</u> <u>Brawner v. Scott Cnty., Tenn.</u>, 14 F.4th 585, 600 (6th Cir. 2021) (explaining that, to succeed on a § 1983, a plaintiff must "present[] sufficient evidence to identify the problematic policy . . . .").

8

to medical care so deficient as to constitute a constitutional injury"). Kensu's failure to present any causation evidence is fatal to his underlying claim.

Even taking as true Kensu's position that Defendants had a policy of deferring 90–99% of referrals,[6] the mere fact that most referrals are deferred is insufficient to prove that Kensu's referrals were deferred for this reason. See Mann v. Helmig, 289 F. App'x 845, 850 (6th Cir. 2008) ("[P]roof merely that . . . a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact.") (punctuation modified, citation omitted); Bey v. Falk, No. 14-13743, 2017 WL 1164509, at *15–16 (E.D. Mich. 29, 2017), rev'd on other grounds, 946 F.3d 304 (6th Cir. 2019) (implicitly rejecting plaintiff's argument—that the fact that "over one-half of all people arrested in Livonia over the past three years are black" proved that the City of Livonia had an unconstitutional practice of "treating black citizens differently than white citizens" that resulted in the plaintiff being illegally stopped—by holding that the plaintiff had "not presented allegations, argument, or evidence (at least not that is connected) to support his claims of municipal liability against Livonia . . . ."). Put differently, the fact that Defendants defer 90–99% of referrals is immaterial if Kensu's referrals were rejected not as a matter of policy but, rather, for some other reason. By Kensu's own admission, 1–10% of referrals are not deferred as a matter of policy.

Because Kensu's response brief does not point to any evidence of causation, his § 1983 claim could not survive summary judgment. Kensu has not shown that he has a meritorious

---

[6] The Court is not required to take allegations as true at the summary judgment stage, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (explaining that allegations are taken as true at the pleading stage), particularly where, as is the case here, Defendants have put forth evidence establishing a material dispute as to whether Defendants had a policy of deferring 90–99% of referrals, see Schmidt Dep. at 69 (Dkt. 39-3) (reflecting testimony of the state medical director for the Quality Correctional Care that only 12% of requests are denied).

9

underlying claim, and, accordingly, he is not entitled to Rule 60(b)(1) relief.  See Yeschick, 675 F.3d at 628.

### III.  CONCLUSION

For the foregoing reasons, Kensu's Rule 60(b)(1) motion (Dkt. 51) is denied.  The case remains closed.

SO ORDERED.

Dated:  June 3, 2022　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge